UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

VERA-LYNN QUATTLANDER,

                Plaintiff,

      - against -

WILLIAM RAY, III,

                Defendant.

---------------------------------------------------------------x

**OPINION & ORDER**

No. 18-CV-3229 (CS)

Appearances:

Hugh G. Jasne
Jasne & Florio, L.L.P.
White Plains, New York
*Counsel for Plaintiff*

Susan D. Smodish
Armienti, DeBellis & Rhoden, LLP
Mineola, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is Defendant's motion for summary judgment. (ECF No. 66.) For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      The following facts are undisputed except where noted.[1]

---

[1] In certain instances Plaintiff purports to deny a fact asserted in Defendant's Local Rule 56.1 Statement but does not elaborate on these denials or support them with admissible evidence. (*See* ECF No. 72-21 ("P's 56.1 Resp.").) Accordingly, any portion of Defendant's 56.1 statement that is properly supported, and that Plaintiff does not specifically deny *with evidence*, is deemed admitted for purposes of this motion. *See Universal Calvary Church v. City of N.Y.*,

A.     **Facts**

Plaintiff Vera-Lynn Quattlander is a homeowner residing at 96 St. Mary's Place/St. Mary Street in Yonkers, New York, who suffers from several health problems including asthma, sickle-cell disease, and fibromyalgia. (P's 56.1 Resp. at ¶¶ 1, 28; ECF Nos. 66-7 through 66-13 ("Quattlander Dep.") at 16:3-8.[2]) Defendant William Ray II owns the property next door, at 89 Hawthorne Place/94 St. Mary Street, but does not reside there. (P's 56.1 Resp. ¶¶ 2-3.)[3] Defendant lives in Neptune, New Jersey, and for twenty-five years rented his property in Yonkers to a tenant named Janet Davila, who vacated the property in Spring 2018. (*Id.* ¶¶ 3-5.) After Davila moved out, Defendant's house in Yonkers was vacant, and continued to be as of the filing of Defendant's motion. (*Id.* ¶ 6.)

Plaintiff, who is sensitive to many chemicals and cannot tolerate the smell of bleach, has called the police and fire departments complaining of odors and fumes, suspecting that these odors and fumes are the cause of her illness and emanate from Defendant's property, perhaps from illegal drug activity occurring in Defendant's house. (*Id.* ¶¶ 10, 13, 26.) On one occasion in August 2017, Plaintiff went to the police and showed them screenshots of air monitors in her

---

No. 96-CV-4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000). In other instances Plaintiff denies knowledge or information sufficient to form a belief as to a statement set forth in Defendant's 56.1 Statement, but "this response is insufficient to refute a properly asserted fact by Defendant[]." *Walker v. City of N.Y.*, 63 F. Supp. 3d 301, 306 n.4 (E.D.N.Y. 2014) (collecting cases), *aff'd*, 621 F. App'x 74 (2d Cir. 2015) (summary order). Thus I also deem admitted any properly supported statement to which Plaintiff responded in that fashion.

[2] For some reason, Defendant filed nearly all of his supporting documents, including deposition transcripts, on the Court's electronic filing system split up over several separate attachments. Because these transcripts are consecutively paginated, I will refer to transcripts that span multiple ECF attachments as one document, and cite to the transcript pagination, for ease of reference.

[3] Defendant is apparently William Ray II, (*see, e.g.*, ECF Nos. 66-30 through 66-32 ("Ray Dep.") at 5:1; 66-33 at 1), so the Clerk of Court shall amend to caption to refer to him as such.

2

home, after which, according to Plaintiff, the police commented that "someone [was] cooking." (*Id.* ¶ 15.) The Police determined at the time, however, that they did not have probable cause to enter the house owned by Defendant. (*Id.*) Other than herself, Plaintiff cannot identify any other individual with personal knowledge of the noxious odors or toxic fumes that she claims emanate from Defendant's Yonkers property. (*Id.* ¶ 7.) Defendant states that he has never received complaints from his other neighbors in Yonkers about "anything going on in the house." (*Id.* ¶ 16.)

Plaintiff also alleges that Davila and her boyfriend, Richard Morales, committed several acts of harassment and vandalism toward her when they lived in Defendant's Yonkers house. (*Id.* ¶ 19.) Defendant states that he had no knowledge of his tenants ever harassing Plaintiff or vandalizing her property. (*Id.* ¶ 22.)

Separately, both Plaintiff and Defendant agree that there was a raccoon infestation in the narrow space between their respective houses. (Quattlander Dep. at 254:17-25, 256:4-6; Ray Dep. at 25:20-25.) The raccoons frequently urinated in the area, which emitted an ammonia smell. (Quattlander Dep. at 257:2-5; Ray Dep. at 25:20-26:8, 42:21-43:2.) Defendant contacted "Critter Control," a contractor, to attach a mesh barrier between the houses to keep the animals out. (Ray Dep. at 25:24-26:4, 32:22-25.) Plaintiff initially gave verbal consent for the contractor to put up the barrier and perform the work, but after the mesh barrier was put up, she changed her mind and requested the barrier be removed, and the contractor came back and removed it. (Quattlander Dep. at 303:19-304:3, 305:23-306:11; ECF No. 66-29; Ray Dep. at 26:2-8, 32:15-21.) Plaintiff also contends that that Defendant conducted roof repairs with loud hammering, and that after these repairs, Defendant's roof extended over the space between their houses, which she claims is over her property line. (Quattlander Dep. at 135:14-144:11.)

3

Plaintiff's and Defendant's properties also share a common sewer line with another nearby property, and this sewer line backed up in 2011 causing water and sewage to flow into Plaintiff's home. (P's 56.1 Resp. ¶¶ 23-25; ECF No. 66-36 ¶¶ 6-10.) Areas of Plaintiff's house have shown signs of water intrusion and mold, and in February 2017 she retained a firm called Environmental Assessments & Solutions to assess her home. (P's 56.1 Resp. ¶¶ 11, 27.) The firm provided Plaintiff with a report that indicated the presence of mold and recommended that the mold – which can produce volatile organic compounds that cause irritation to the nose, throat, and eyes, as well as respiratory distress – be remediated, (*id*. ¶¶ 11, 18), but Plaintiff never did so, (*id.* ¶ 12).

### B.     **Procedural History**

Plaintiff filed the original complaint in this case on April 13, 2018. (ECF No. 1.) After a pre-motion conference for an anticipated motion to dismiss on July 5, 2018, (Minute Entry dated July 5, 2018), Plaintiff amended her complaint, (ECF No. 15 ("AC")), and Defendant opted to answer rather than file the motion, (ECF No. 16). After a case management conference on January 17, 2019, (Minute Entry dated Jan. 17, 2019), I entered a discovery plan and scheduling order, (ECF No. 20). After several extensions and discovery disputes, I held another conference on January 24, 2020, at which I ordered all expert discovery to be completed by April 24, 2020, without exception. Plaintiff chose not to submit expert disclosures by the Court's deadline.

On May 8, 2020, I held a pre-motion conference regarding Defendant's anticipated motion for summary judgment. (Minute Entry dated May 8, 2020.) Following that conference, Plaintiff's original counsel was relieved. (Minute Entry dated Aug. 25, 2020.) The instant motion followed, (ECF No. 66), and after Plaintiff retained new counsel, (ECF No. 67), she filed her opposition on January 8, 2021, (ECF No. 72 ("P's Mem.")), and Defendant replied, (ECF

4

No. 80).  As part of her opposition, Plaintiff filed an affirmation in which she asserted that "I have only recently obtained what I would deem more appropriate or proper environmental testing, however I also understand that these tests are not before the Court and thus really should not be commented on as part of this application," and that "[m]y current attorney and I are now endeavoring to obtain medical documentation which will be coupled with the environmental testing, and based upon that result will seek to present same to the Court as part of this case but with permission for submitting such information this late in the proceedings."  (ECF No. 72-1 ¶¶ 10-11.)  No such application or additional evidence was ever filed.[4]

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

---

[4] In addition to filing memoranda of law, counsel for both sides submitted affirmations. (ECF Nos. 66-1, 72-20.)  But "[u]nlike the typical attorney affirmation, which simply attaches and identifies exhibits for the Court," *Dejana Indus., Inc. v. Village of Manorhaven*, No. 12-CV-5140, 2015 WL 1275474, at *2 (E.D.N.Y. Mar. 18, 2015), these affirmations contain factual summaries and legal argument.  Such a declaration is "improper and inadmissible" both because it "could not possibly be based on personal knowledge because it is based entirely on counsel's own interpretation of the evidence in the record," *id.*, and because "under Local Civil Rule 7.1, legal argument must be set forth in a memorandum of law, not in an attorney affirmation," *id.* at *3; *see H.B. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *5-6 (S.D.N.Y. Sept. 27, 2012).  I will not allow counsel to bypass the page limits on memoranda of law set by my individual practices by submitting additional argument in the form of an affirmation.  Accordingly, I decline to consider either affirmation, but even if I were to do so, it would not make a difference to the outcome of this motion because the points raised either are irrelevant, duplicative, unsupported by evidence, or otherwise addressed in this decision.

counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and

6

supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

In numerous places in her opposition, Plaintiff incorrectly contends that because it is unclear what is causing her ailments, summary judgment must be denied. For example, in Plaintiff's brief, counsel argues that "Defendant has failed to prove that absolutely nothing is occurring" on his property that is harming Plaintiff. (P's Mem. at 2.) Counsel further argues that an open question as to whether Defendant is responsible defeats Defendant's application. (*Id.*) Counsel suggests that the motion must be denied because Defendant has not proffered medical evidence "demonstrating that Plaintiff is not suffering or at least potentially suffering from the effects of some sort of gas including gases which may be found emanating from sewage." (ECF No. 72-20 ¶ 13.e.) Plaintiff states in her affidavit that "the questions are unanswered as to what is causing any ill effects I am suffering, and without knowing that causation I believe, based on conversations with my attorney, that the request for Summary Judgment should be denied." (ECF No. 72-1 ¶ 21.)

These arguments betray a profound misunderstanding as to how summary judgment works.[5] There is no requirement that the moving party negate the non-moving party's claim. *Celotex*, 477 U.S. at 323. In other words, Defendant is not required to disprove Plaintiff's claims. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes*

---

[5] I of course do not expect Plaintiff to have any knowledge on that subject apart from what she has been told by counsel.

7

*Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). If Defendant points to the absence of evidence supporting Plaintiff's claims, as he has done here, Plaintiff then can defeat summary judgment only by pointing to evidence from which a reasonable jury could find in her favor. *See Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.). Thus, if – as Plaintiff argues – it is "unclear what . . . is actually occurring," (ECF No. 72-20 ¶ 11), a reasonable jury could not find for Plaintiff without speculating, and summary judgment for Defendant is appropriate. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001) ("[I]n order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor," and "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation.") (cleaned up), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e); *see Krayeske v. City of Hartford*, No. 07-CV-827, 2010 WL 3925445, at *3 (D. Conn. Sept. 28, 2010) (speculative inferences do not form basis on which reasonable jury could find for plaintiff). That is the case here, for the reasons set forth below.

    A.    **Harassment by Non-Parties**

Defendant first seeks summary judgment on the issue of whether Plaintiff can seek relief against him for the harassment Plaintiff alleges she suffered at the hands of his tenants, Janet Davila and Richard Morales. Plaintiff admitted in her deposition that it was Defendant's tenants, not Defendant himself, who harassed her, (Quattlander Dep. at 155:12-20), so Plaintiff apparently seeks to hold Defendant vicariously liable for the actions of his tenants. Defendant argues that as a landlord, he had no control over these non-party individuals and thus cannot be liable for their acts. (ECF No. 66-44 at 2-5.)

In New York, "[a] conveyance by lease is generally absolute, limited only by its specific provisions. By virtue of the right to exclusive occupation which a tenant acquires by his lease, he becomes entitled to use the premises in the same manner as the owner might have done." *People v. Scott*, 26 N.Y.2d 286, 289 (1970) (cleaned up). Therefore, "the question of control is decisive" to extending liability to a landlord for his tenants' wrongful actions, meaning he will be liable, "only if he had a right of entry at the time that notice was served upon him" of the offending conduct. *Id*. Courts in New York are "reluctan[t] to find that the landlord has retained control for the purpose of declaring him a tort-feasor," *id.* at 290-91, because a landlord must have a "reasonable opportunity or effective means to prevent or remedy" his tenant's conduct, especially when "the incident giving rise to the injuries sustained, and indeed, the pattern of harassment alleged . . . [arises] from a purely personal dispute" between the tenant and the affected individual. *Britt v. N.Y.C. Hous. Auth.*, 770 N.Y.S.2d 744, 745 (App. Div. 2004). Landlords are held liable "only when the facts justify a conclusion that control has been retained in fact." *Scott*, 26 N.Y.2d at 290. There is no indication in the record that Plaintiff ever complained to Defendant about the alleged harassment by the tenants, or that Defendant could have abated the harassment by entering onto the property.

Plaintiff, for her part, cites *Fifth Ave. Ctr., LLC v. Dryland Props., LLC*, Nos. 652724/2015, 595365/2016, 2020 WL 41659, at *12 (N.Y. Sup. Ct. Jan. 3, 2020), for the proposition that a provision in Defendant's lease, which allows the landlord the ability to enter the property for the purposes of making repairs, means he has control over his tenants. (P's Mem. at 13-14; *see* ECF No. 66-33.) The holding of this case, however, is much more limited than Plaintiff suggests. *Fifth Ave. Ctr.* states that an out-of-possession landlord may maintain a "degree of control," and thus may have an obligation to abate a nuisance, where there is a right to

9

re-enter in order to inspect or repair, when the nuisance is "a significant structural or design defect that is contrary to a specific statutory safety provision." *Fifth Ave. Ctr.*, 2020 WL 41659, at *12 (cleaned up); *see Ross v. Betty G. Reader Revocable Tr.*, 927 N.Y.S.2d 49, 51 (App. Div. 2011). The harassment by the other tenants at issue here was interpersonal, not caused by a failure to repair a structural or design defect in Defendant's house. As such, Defendant's right in the lease to make repairs does not give him control for purposes of his tenants' harassing behavior.

Further, to the extent Plaintiff seeks to hold Defendant liable for fumes resulting from his tenants' alleged illegal drug activity, which will be discussed further below, New York statutory law is clear that an owner of real property may only be held liable jointly and severally with his tenants for damage from illegal activity when that owner "knowingly" leases, gives possession of, or permits the property to be used for an unlawful trade, manufacture, or business. N.Y. Real Prop. L. § 231(2); *see Scott*, 26 N.Y.2d at 289 (If a landlord "knowingly lets the premises for a purpose which may give rise to liability, he will not be heard to complain, even though he has done no unlawful act."). Plaintiff has provided no evidence that Davila or Morales were in fact engaged in an illegal drug business, much less that Defendant was aware of any such activity. *Cf. Simmons v. City of N.Y.*, 562 N.Y.S.2d 119, 120 (App. Div. 1990) (question of fact for jury whether landlord's failure to evict an alleged drug dealer could serve as a predicate for liability for tortious act connected with the illegal drug activity where it was "common knowledge" that the building had a drug problem). While Plaintiff called the police and fire department multiple times, (ECF No. 66-22; P's 56.1 Resp. ¶ 10), she admits that they never made an arrest at Defendant's property and that, to her knowledge, the police did not have probable cause to

10

conduct a search, (P's 56.1 Resp. ¶¶ 10, 15).  Her allegations regarding illegal activity on the part of the tenants is pure speculation.

Because Plaintiff has failed to provide evidence from which a reasonable jury could find that Defendant either had control of his tenants or knowledge of any harassment or illegal activity on their parts, Defendant is entitled to summary judgment on Plaintiff's causes of action seeking to hold him liable for the alleged actions of his tenants.[6]

### B. <u>Water and Sewage Intrusion</u>

Defendant next argues that claims based on the incidents of water and sewage intrusion into Plaintiff's home that occurred in 2011 are time-barred, arguing that "action(s) to recover damages for an injury to property" or for "a personal injury" must be "commenced within three years." N.Y. C.P.L.R. § 214.  Defendant also notes the absence of evidence as to his liability for the water and sewage intrusion in Plaintiff's home, and offers expert testimony suggesting alternate causes for the sewer backup, which thereby shifts the burden to Plaintiff to create an issue for trial through specific factual assertions.  *See Anderson*, 477 U.S. at 249.

Plaintiff argues that the water and sewage were still seeping into her home as of the time she filed this lawsuit, and also states that her claims fall within the exception to the statute of limitations in CPLR § 214-c, which reads:

1. In this section: "exposure" means direct or indirect exposure by absorption, contact, ingestion, inhalation, implantation or injection.

2. Notwithstanding the provisions of section 214, the three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be

---

[6] In response to Defendant's contention in his affidavit that he had no knowledge at any time that any acts of harassment were taking place, (ECF No. 66-35 ¶ 2), Plaintiff responds that Defendant admitting to "hammering" when making repairs.  (P's Mem. at 6.)  The Court does not see how this *non-sequitur* assists Plaintiff.

11

> computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

N.Y. C.P.L.R. § 214-c. Beyond citing these provisions, however, Plaintiff makes no argument, and offers no evidence, as to when she discovered her injuries, how Defendant is liable for the water and sewage intrusion into her home, or how that intrusion contributed to her present-day injuries. Instead, she attempts to argue that Defendants' expert reports are deficient.

Defendant submitted affidavits and reports of two experts, Steven Pietropaolo of LGI Forensic Engineering, P.C., (ECF No. 66-36), and Robert I. Leighton of JS Held LLC, (ECF No. 66-39). Pietropaolo, a professional engineer, concluded, after inspecting the two homes and reviewing a 2013 report by his firm related to the 2011 sewer damage, that "[a]ny problems of sewer odor, sewer back-up or seepage of sewage into plaintiff's home were the direct result of the antiquated and defective (clogged) sewer line" serving Plaintiff's and Defendant's homes. (ECF No. 66-36 ¶ 12.) He reasoned that "[i]n order for a sewer back-up to occur, a failed backwater valve in concert with another event which would cause rising backpressure in the sewer line would be required," such as "blockage in the line downstream, or the line being overwhelmed by a large amount of flow, such as occurs in a heavy rainstorm and where the storm drains flow into the sewer." (*Id.*) Pietropaolo notes that "plaintiff herself allowed the antiquated stormwater connections, and plaintiff took no action to maintain or upgrade her portion of the common sewer system." (*Id.*) He concludes that "defendant's actions and the condition of his property did not cause sewage back-up and resulting damage to plaintiff's home." (*Id.*)

Leighton, a certified industrial hygienist, tested the indoor air quality of the two homes. He explained that he "did not detect the presence of any 'chemical fumes' anywhere within Mr.

Ray's house" and that "when [he] was outside in the area between the two houses, there was no trace of any type of chemical fume or odor." (ECF No. 66-39 ¶ 6.) In Plaintiff's home, he detected "concentrations of airborne Aspergillis/Penicillium-type mold-spores . . . at levels which are high and thus cause for concern in seven of the twelve samples" he collected. (*Id.* ¶ 9.) Based on his testing and the samples he collected, as well as his review of relevant materials, Leighton concluded that "the defendant's action and the condition of his property did not cause water, sewer and/or vapor/gas intrusions into plaintiff's home" and that "conditions in plaintiff's home, which she has allowed to exist over several years, have more likely had negative impacts to her health." (*Id.* ¶ 14.)

The sections of Plaintiff's memorandum of law that purport to challenge the sufficiency of Defendant's expert reports border on incomprehensible. First, Plaintiff states that Ray's affidavit offers an alternative explanation for the sewage and water backup in 2011 – namely, that a neighbor in a third house on the same sewer line flushed diapers down the toilet – implying that Defendant's expert's conclusion about the source of the backup is therefore incorrect. (P's Mem. at 8-9.) Even if the theory raised in Ray's affidavit is true, however, it does not logically follow that Defendant is liable for the back-up. The only evidence Plaintiff raises to rebut the evidence against Defendant's liability is the fact that Ray conducted repairs on his roof, coupled with his admission that his house is uphill from Plaintiff's and that water flows downhill. (*Id.* at 9-11.) Plaintiff feebly attempts to argue that this somehow creates a triable question of fact as to the source of the water, but again offers no further argument or explanation as to the chain of inferences a factfinder would have to draw to reach this conclusion.

Finally, in a separate section of her memorandum, Plaintiff appears to argue that Pietropaolo's expert report is insufficient as a matter of law and must be disregarded because he

13

failed to include "the facts or data considered" or a "complete statement" of the "basis and reasons" for the expert's opinions. (P's Mem. at 4-5.) I do not follow this argument, as Pietropaolo's expert report clearly states that he relied on his own inspections of the property in 2019, as well as the 2013 inspection and resulting report prepared by his firm, in reaching his conclusions. (ECF No. 66-37 at 7-8.)

It follows, then, that even assuming that all of Plaintiff's claims are timely, Plaintiff has offered nothing but speculation to contest the findings of Defendant's experts on the issue of water and sewage intrusion. *See Major League Baseball Props.*, 542 F.3d at 310 ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are . . . based on speculation."). Indeed, even if Defendant had submitted no expert reports, Plaintiff has presented no evidence from which a rational jury could conclude that whatever fumes are troubling Plaintiff originated from Defendant's property. As she and her counsel candidly, if perhaps unadvisedly, note, they do not know what is causing any fumes Plaintiff perceives. (ECF Nos. 72-1 ¶ 21, 72-20 ¶ 11.) In the absence of evidence that the fumes are Defendant's responsibility, no rational jury could find in Plaintiff's favor on the nuisance claim relating to fumes from a sewage or water intrusion.

### C.    Nuisance, Trespass, and Abnormally Dangerous Activity

Defendant also moves for summary judgment on plaintiff's claims for nuisance, trespass, and abnormally dangerous activity.

#### 1.    Private Nuisance and Abnormally Dangerous Activity

Under New York law, "[a] private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land. It is actionable by the individual person or persons whose rights have been disturbed.'" *Scribner v. Summers*, 84 F.3d

554, 559 (2d Cir. 1996) (quoting *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 568 (1977)). "The elements of a private nuisance cause of action are an interference (1) substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." *Broxmeyer v. United Cap. Corp.*, 914 N.Y.S.2d 181, 184 (App. Div. 2010) (cleaned up). "[N]ot every annoyance," however, "will constitute a nuisance." *Domen Holding Co. v. Aranovich*, 1 N.Y.3d 117, 124 (2003). This is because "[n]uisance imports a continuous invasion of rights," meaning "a pattern of continuity or recurrence of objectionable conduct." *Id.* (cleaned up).

Similarly, "[o]ne who carries on an ultrahazardous or abnormally dangerous activity is strictly liable for the harm inflicted by the activity." *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 531 (S.D.N.Y. 2007) (citing *Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440 (1977)); *see also State v. Schenectady Chems., Inc.*, 459 N.Y.S.2d 971, 976 (Sup. Ct. 1983) ("One who creates a nuisance through an inherently dangerous activity or use of an unreasonably dangerous product is absolutely liable for resulting damages, irregardless [*sic*] of fault, and despite adhering to the highest standard of care.").

"It is for the court to decide whether an activity of a landowner is abnormally dangerous and warrants imposition of strict liability." *Mayore Estates, LLC v. Port Auth. of N.Y. & N.J.*, No. 02-CV-7198, 2003 WL 22232918, at *2 (S.D.N.Y. Sept. 26, 2003) (citing Restatement (Second) of Torts § 520, cmt. *l*). The New York Court of Appeals follows the six-factor test listed in Restatement § 520 in making that determination:

> "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes."

*Doundoulakis*, 398 N.Y.S.2d at 448 (quoting Restatement (Second) of Torts § 520).  The Restatement explains how to apply these factors:

> [A]ll [are] to be considered, and [all are] of importance.  Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability.  On the other hand, it is not necessary that each of them be present, especially if others weigh heavily.

Restatement (Second) of Torts § 520 cmt. f; *see Kowalski v. Goodyear Tire & Rubber Co.*, 841 F. Supp. 104, 109 (W.D.N.Y. 1994); *Doundoulakis*, 398 N.Y.S.2d at 448 ("Analysis of no one factor is determinative.").

Plaintiff has failed to present evidence that could support a reasonable conclusion that Defendant has created a nuisance, much less engaged in an abnormally dangerous activity.  First, as stated above, there is no evidence that any fumes or smells are emanating from Defendant's home to begin with, and Defendant has presented expert testimony that no fumes were detected there, but that there were high amounts of mold, a substance that can cause adverse health effects, in Plaintiff's home.  Although Plaintiff testified that she engaged an industrial hygienist to inspect her home and take air samples, as well as set up air monitors to detect volatile organic compounds in her home, (Quattlander Dep. At 163:12-167:7), her counsel inexplicably has not included records from the industrial hygienist or data from these air monitors here or, apparently, produced them to the Defendant or given the findings to an expert for review.  There is simply no basis on which a rational jury could find fumes entering Plaintiff's home from Defendant's.

Further, even if Plaintiff had presented evidence that chemical fumes were emanating from Defendant's house, most of the smells Plaintiff claims to detect, including bleach, ammonia, chlorine, paint, insecticide, and acetone, are commonly used in home cleaning, maintenance, and repair, and are appropriate and reasonable for such residential uses.  Likewise, the noise of hammering during roof repairs, (*see* P's Mem. at 12), is unavoidable and reasonable.

Plaintiff has presented no evidence that these sorts of routine home maintenance activities were continuous or recurring, or otherwise unreasonable in any way.

As such, Defendant is entitled to summary judgment on these claims. Any other conclusion here would only reward Plaintiff's speculation.

### 2. Trespass

Plaintiff also brings claims for trespass, alleging that Defendant encroached on her property by extending his roof into the space between the houses, which she claims is hers, and by putting up a mesh barrier between the houses, which touched her home.[7]

"Under New York law, trespass is the intentional invasion of another's property," *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996), meaning "an intentional entry onto the property of another without justification or permission." *Woodhull v. Town of Riverhead*, 849 N.Y.S.2d 79, 81 (App. Div. 2007). "To be liable, the trespasser need not intend or expect the damaging consequences of his intrusion; rather, he need only intend the act which amounts to or produces the unlawful invasion." *Scribner*, 84 F.3d at 557 (cleaned up). "The intrusion itself must at least be the immediate or inevitable consequence of what the trespasser willfully does, or which he does so negligently as to amount to willfulness." *Id.* (cleaned up).

---

[7] While Plaintiff also bases her trespass claims on the emission of fumes and odors into her home from Defendant's property, intangible intrusions such as odors, noise, etc. are ordinarily decided in nuisance, not trespass, because they interfere with one's use and enjoyment of land, rather than the right to exclude. *See Fresh Air for the Eastside, Inc. v. Waste Mgmt. of N.Y., L.L.C.*, 405 F.Supp.3d 408, 450 (W.D.N.Y. 2019) ("[I]nasmuch as such intangible entries onto land do not interfere with the right of exclusive *possession* of real property, but only with the *use and enjoyment* of property, they do not give rise to a trespass.") (emphasis in original) (cleaned up); *Ivory v. Int'l Bus. Machs. Corp.*, 983 N.Y.S.2d 110, 117 (App. Div. 2014) ("Generally, intangible intrusions, such as by noise, odor, or light alone, are treated as nuisances, not trespass because they interfere with nearby property owners' use and enjoyment of their land, not with their exclusive possession of it.") (cleaned up). In any event, even if such a claim could be brought as a trespass, it would fail for the same reasons as the nuisance claim: absence of evidence that fumes from Defendant's property have penetrated Plaintiff's property.

17

As to the alleged overhanging roof, Plaintiff admitted in her deposition that she could not see the overhang in any of the photos in evidence. (Quattlander Dep. At 136:2-139:11). In response to this motion, she submitted no photos or other evidence documenting this alleged overhang. Further, although she claims that the alleged overhang extends over the area between the houses, which she claims is hers according to a survey of the land, she failed to submit any documentation showing that that area is in fact her property. (*Id.* at 136:4-12, 140:6-12.) Accordingly, the Court has no choice but to grant summary judgment on this claim in favor of Defendant.[8]

As to the mesh barrier, Plaintiff admitted in her deposition that she gave verbal permission to the contractor for the mesh barrier to be put up, but then changed her mind, after which the barrier was promptly taken down. (Quattlander Dep. at 303:19-304:3, 305:23-306:11; *see* ECF No. 66-29.) A trespass requires that the offender act "without justification or permission." *Woodhull*, 849 N.Y.S.2d at 81. Because Plaintiff herself admits that Defendant acted with permission, summary judgment is appropriate.

### D. Medical Monitoring and Fear of Contracting Illness

Lastly, Defendant moves for summary judgment on Plaintiff's claims for "medical monitoring and fear of contracting illnesss." (AC at 10.) "[T]o maintain a cause of action to recover damages for emotional distress following exposure to a toxic substance, a plaintiff must

---

[8] Additionally, while "[a]n invasion of another's property or airspace need not be more than de minimis in order to constitute a trespass," *Standard Realty Assocs., Inc. v. Chelsea Gardens Corp.*, 964 N.Y.S.2d 94, 94-95 (App. Div. 2013), courts can decline to award relief when the encroachment is *de minimis*, *Zhuang Li Cai v. Uddin*, 871 N.Y.S.2d 675, 676 (App. Div. 2009) ("[B]ased on the de minimis character of the alleged encroachment and the complete absence of any evidence to support the appellant's claim for damages, the Supreme Court properly declined to award the appellant any damages.") (collecting cases). A roof encroaching on an unusable and inaccessible strip of land between two houses, even if technically a trespass, is certainly *de minimis*.

establish both that he or she was in fact exposed to a disease-causing agent and that there is a rational basis for his or her fear of contracting a disease." *Kamdem-Ouaffo v. Pepsico, Inc.*, 21 N.Y.S.3d 150, 153 (App. Div. 2015) (cleaned up) (collecting cases).  New York courts have "construed 'rational basis' to mean the clinically-demonstrable presence of a toxin in the plaintiff's body, or some other indication of a toxin-induced disease." *Id.* (cleaned up).

Plaintiff fails to satisfy either requirement.  Again, there is no evidence from which a jury could infer that anything harmful is emanating from Defendant's property, let alone causing Plaintiff's symptoms – a showing she would presumably need expert testimony to make – so she has not shown exposure or reason to believe Defendant will cause her to contract a disease. Instead of providing admissible evidence documenting her injuries, connecting her injuries to conditions emanating from Defendant's property, or showing that the conditions on Defendant's property even exist, she submits printouts of several online articles with titles such as "What You Need to Know if You Smell Sewer Gas," and "19 Carbon Monoxide Gas Poisoning Symptoms, Causes, Treatment, and Risks."  (ECF No. 72-4.)  Her counsel must have known, or should have, that in addition to being inadmissible hearsay, these online articles are woefully insufficient for a reasonable jury to find that his individual client's health issues were connected to sewer gas or fumes, much less that the sewer gas and fumes were emanating from Defendant's property.

While Plaintiff purports to assert a cause of action for "medical monitoring," the New York Court of Appeals has explicitly declined to recognize such an independent cause of action. The Court instead holds that "plaintiffs who have in fact sustained physical injury" may obtain "the remedy of medical monitoring" where "the remedy is premised on the plaintiff establishing entitlement to damages on an already existing tort cause of action." *Caronia v Philip Morris USA, Inc.*, 22 N.Y.3d 439, 452 (2013).  Because Defendant is entitled to summary judgment on

19

every cause of action asserted in Plaintiff's complaint, and because Plaintiff has not produced specific evidence of her physical injuries resulting from Defendant's conduct, Plaintiff is not entitled to medical monitoring.

***

I do not suggest that Plaintiff is not in genuine distress, but because she has not produced evidence from which a reasonable jury could conclude that Defendant or his property is the cause, this lawsuit can provide her no remedy.

## IV.     CONCLUSION

"Under *Celotex*, the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case.  Because defendant has done so here," *Tingling v. Great Atl. & Pac. Tea Co.*, No. 02-CV-4196, 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) (cleaned up), and Plaintiff has not in response presented admissible evidence raising genuine issues of material fact, summary judgment is GRANTED.  The Clerk of Court is respectfully directed to amend the caption as set forth in footnote 3 above, terminate the pending motion, (ECF No. 66), and close the case.

**SO ORDERED.**

Dated:   October 29, 2021
            White Plains, New York

*Cathy Seibel*
_____
CATHY SEIBEL, U.S.D.J.